## STATE, EX REL. SLACK, v. OWEN, AUDITOR. ·

Statutory   Construction—Legislative   Printing—Appropria-
tions.

1. Repeals by implication are not favored.

2. The specific appropriation of $500 for printing the journals of the fourth State Legislature, contained in the general appropriation act (Laws 1897, Chap. 51, Sec. 18) did not operate as a repeal of the appropriation of $2,000, for the necessary legislative printing and advertising of said fourth Legislature (Chap. 1, Sec. 2).

3. The relator having printed and bound the journals of the Senate and House of the fourth State Legislature, in pursuance of a contract with the Secretary of State, the amount of his bill therefor in excess of the specific appropriation of $500 is properly payable out of the $2,000 appropriation for legislative printing, there being an unexpended balance in said last-mentioned appropriation.

4. Under Section 1 of Chapter 19, L., 1893, the duty of the auditor to transfer the balance of an appropriation to the fund out of which the appropriation was made, does not arise until all the payments legally chargeable to such appropriation have been made.

[Decided September 27, 1897.]

Original proceeding in mandamus.

The relator, E. A.. Slack, entered into a contract with the State, through the Secretary of State, to do such printing as might be ordered by the fourth State Legislature, including the journals of the Senate and House of Representatives. The contract was made prior to the convening of said Legislature, and was made and executed under the authority conferred by Chap. 48, Sec. 8, Laws of 1890–91. Having printed and bound the journals, he presented his bill therefor, amounting to $677.13, to the auditor. The latter drew a warrant for $500 of the amount, and refused to issue a warrant for the balance on the ground that there was no appropriation from which payment could be made. The relator then sought the

intervention of the court to compel the issuance of a State warrant in payment of the balance of his claim. Respondent demurred to the petition, and the cause was heard upon such demurrer.

*Van Orsdel & Burdick*, for relator.

A specific appropriation was made by the fourth Legislature from which relator's claim is payable. (L. 1897, Chap. 1, Sec. 2.) The journals are printed by authority of a general statute. (L. 1890–91, Chap. 48, Sec. 8.) The subsequent appropriation of $500 in the general appropriation act (L. 1897, Chap. 51, Sec. 18) was evidently the result of the anticipation by the legislature that the former general appropriation for legislative printing would prove inadequate. It can not be reasonably contended that the subsequent appropriation expressed a limit that should be paid for printing the journals, as by a general law the price was to be fixed by contract based upon the lowest responsible bid. The later provision did not repeal the former. (State, ex rel. Holcomb, v. Burdick, 4 Wyo., 290.) Even if no appropriation had been made by the fourth Legislature to pay any claim of relator arising out of his contract, such claim would be properly and legally payable out of the general fund under the provisions of the act authorizing the contract, which, until repealed, is a continuing appropriation. (Const. Art. 1, Sec. 35 ; State v. Barker, 4 Kan., 379 ; People v. Sec'y, 58 Ill., 90 ; State v. Burdick, 4 Wyo., 272 ; Campbell v. Com'rs, 18 N. E., 33 ; Donnellan v. Nichols, 1 Wyo., 61.)

*Benjamin F. Fowler*, Attorney General, for respondent, cited People ex rel. v. Commissioners, 120 Ill., 322.

CONAWAY, CHIEF JUSTICE.

Respondent demurs to the petition of relator on the single ground that it does not state facts sufficient to constitute a cause of action. The petition sets up a legal and valid contract by relator with the Secretary

of State for doing a class of work commonly designated as "legislative printing," that such work was done according to contract to the amount of $677.13, and that an account therefor was duly approved by the Secretary of State, and that the fourth Legislature made an appropriation to pay the expenses of that Legislature, and that the relator's claim was properly payable out of such appropriation, and that there is yet in the State treasury to the credit of said appropriation more than sufficient moneys to pay relator's claim, and that respondent, as auditor, drew his warrant on the State treasurer for only $500, and refused to draw his warrant for the balance of the claim of relator.

This case is a petition for the writ of mandamus directing respondent to draw his warrant as auditor for the balance of relator's claim. So far as these allegations are allegations of matters of fact, they are to be taken as true on demurrer. But the question whether the fourth Legislature did make an appropriation from which relator's claim is legally payable is properly discussed by counsel as a question of law. Sec. 2 of Chap. 1, Laws 1897, reads as follows: "There is hereby appropriated out of any funds in the State treasury not otherwise appropriated, the sum of two thousand dollars, or so much thereof as may be necessary, to pay for the necessary legislative printing and advertising of the fourth Legislature of the State of Wyoming." If this stood alone, there would seem to be no ground to question the legality of paying relator's claim from this appropriation. But in Chap. 51, Sec. 18, a further appropriation is made in the following language: "The sum of five hundred dollars, or so much thereof as may be necessary, is appropriated out of any funds in the State treasury not otherwise appropriated, to pay for printing the journals of the fourth State Legislature."

Repeals by implication are not favored, and upon this ground it might be held that it was not the intention of the Legislature, by this appropriation, to repeal the former

appropriation in any respect, nor specially, in so far as it made provision for paying for printing the legislative journals. But there is yet another section bearing upon this matter. Sec. 33 of Chap. 51 enacts, with certain provisos not material to the question under the discussion here, that: "All acts and parts of acts inconsistent with the provisions of this act are hereby repealed, and no money shall be paid out of the State treasury during the period covered by this act and for the purpose herein provided, in excess of the appropriations hereby made, or otherwise specially provided by law."

As the appropriation of $2,000 for legislative printing of the fourth Legislature is an appropriation otherwise specially provided by law, it seems clear that it was not the intention of the Legislature to prohibit payment for any class of legislative printing from such appropriation.

Something has been said about the duty of respondent as auditor to restore to the general fund of the State treasury any unexpended balances of appropriations on March 31, 1897. Whether respondent actually did this does not appear. But it may not be obiter to consider the legal question whether he should have done so, and whether it is, therefore, to be considered that he did so, in the discharge of his official duty. The fourth State Legislature enacted nothing bearing upon this question. The third State Legislature enacted that "any and all balances of appropriations made by the third State Legislature remaining in the treasury on the thirty-first day of March, eighteen hundred and ninety seven, more than the outstanding obligations then contracted and properly payable from such appropriations, shall be restored to the general fund on that day; provided, however, that this section shall not apply to any balance in any special fund established by law, but all balances remaining in any special fund shall be continued in such respective fund and be available for their proper use." Sess. Laws 1895, p. 159, Chap. 75, Sec. 35. So, as far as we have express legislation upon the subject, it is to the effect only that

unexpended balances of appropriations made by the Legislature of 1895 should be restored to the general fund on March 31, 1897. The second State Legislature made the same provision for restoring to the general fund unexpended balances of its appropriations on March 31, 1893. Sess. Laws 1893, p. 52, Chap. 22, Sec. 48. The first State Legislature made the same provision for restoring to the general fund unexpended balances of its appropriations on March 31, 1891. Sess. Laws 1891, p. 230, Chap. 61, Sec. 26.

If it were the plain duty of respondent, as auditor, to restore to the general fund on March 31, 1897, unexpended balances of the appropriations of 1897, the equitable doctrine might be claimed to apply that that will be considered as done which ought to have been done, and that the restoration should be considered as made. But there is no statute requiring such restoration. If the example of all former Legislatures of the State of Wyoming had been followed, such restoration would be required on March 31, 1899; and then there would be restored only the excess of appropriations above "the outstanding obligations then contracted and properly payable from such appropriations. It is suggested that Sec. 1, Chap. 19, Sess. Laws 1893, requires such restoration to be made on or before March 31, 1897. This is a general law applying to balances remaining in any appropriation "after making the payments legally chargeable thereto."

We are of the opinion that the payments legally chargeable to the appropriation for legislative printing have not all been made. Therefore the duty to return the balance to the general fund has not yet arisen. The statutes prescribing the duties of auditor are very stringent, and the exercise of care and prudence on his part is commendable. The object of the statutes, however, is evidently to secure the application of so much of the appropriations as may be necessary to the prompt payment of the debts provided for, and that the State should resume control of

the surplus without denying or unnecessarily delaying the payment of any just debt. The demurrer is overruled.

Potter and Corn, JJ., concur.